
RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  2/17/10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 08-0367 |
| VERSUS | JUDGE HAIK |
| RONALD LYNN BROUSSARD, JR.., ALAN R. BEATY, and ROBERT WAYNE BOWLIN, SR. | MAGISTRATE JUDGE HILL |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REASONS FOR JUDGMENT

### A.  Facts

On or about September 22, 2008, Ronald Lynn Broussard, Jr., a United States citizen employed as a DOD contract civilian medic by Special Operations Consulting (SOC-SMG) at Al-Asad Air Base, Iraq, and co-defendants Alan R. Beaty, a United States citizen employed as a contractor site manager for SOC-SMG at Al-Asad Air Base, Iraq, and Robert Wayne Bowlin, Sr., a United States citizen employed by Taos Industries, Al-Asad Air Base Iraq allegedly abducted two individuals at gun point. The two men were purportedly taken away by the defendants in a truck and held until one of the men agreed to provide the defendants with alcohol.

Defendant Broussard allegedly brandished a 9MM pistol, physically grabbed one of the men, and communicated death threats to both men while trying to get information relating to the alcohol. Broussard is alleged to have slammed one of the men's head into the side of the truck and hit him in the head with the butt of his pistol. According to the Indictment, Broussard also held a third person at gun point and communicated death threats to him in an attempt to get information as to the location of one of the individuals who was supplying alcohol to the Defendants. Broussard allegedly advised that he would kill the victim if they notified law enforcement. According to the indictment, Beaty guarded one of the men in the bed of the truck

while the man was being transported by the group. Beaty was Broussard's supervisor at SOC-SMG. Bowlin was purportedly present during the incident and went along with the group during the course of events.

**B.    Defendant Beaty's Contentions**

Beaty contends that he was subjected to an extraordinary length of confinement after arrest without benefit of prompt indictment. Beaty argues that the Government had sole control over the process, had ample warning that such process would be problematic, and took no steps to correct this delay in violation of The Speedy Trial Act. Thus, this court should dismiss the indictment with prejudice.

Beaty contends that he was detained by agents following the aforementioned incident on September 27, 2008. He states that he was flown from Al Asad to Camp Liberty in Baghdad and placed in an isolation holding cell on September 28, 2008. On or about October 1, 2008, a hearing was held to determine Beaty's confinement status, ultimately resulting in the Military Magistrate Judge ordering continued confinement. He argues that he remained at Camp Liberty throughout October and November of 2008 where the conditions of confinement bordered on oppressive. He insists that his confinement prevented him from being able to retain counsel, as he was denied access to military counsel who could enter into an attorney-client relationship.

On December 2, 2008, Beaty was charged by Bill of Information with conspiracy, kidnaping, assault, use of a firearm during a crime of violence, and tampering with a witnes. He contends that on December 5, 2008, a telephone hearing was held by Magistrate Judge Hill, after which Federal Marshals took custody of Beaty. On December 7, 2008, Beaty was flown to Lafayette, Louisiana; he was placed in St. Martin Parish Jail the next day. On December 10, 2008, an indictment was handed down against Beaty in the Western District of Louisiana. On

December 11, 2008, Beaty was released from confinement shortly after meeting the terms and conditions of his pre-trial release set by the Court.

Beaty argues that he was confined for a period of seventy-five (75) days from the date of arrest to the date of the indictment. He contends that the Speedy Trial Act, 18 U.S.C. 3161, provides that "any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested...in connection with such charges." Defendant also argues that the Act further provides that, if an indictment is not returned within the mandatory thirty day time limit, "such charge against the individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. 3161 (a)(1).

Beaty insists that the Military Extraterritorial Jurisdiction Act (MEJA) goes beyond the enumerated congressional powers; thus, this statute must be found unconstitutional as applied to the Defendant. Beaty argues that the assertion of jurisdiction under MEJA is unreasonable under international law. He insists that the alleged offenses have no substantial, direct, or foreseeable effect upon the United States. Likewise, the United States cannot claim that the regulation of petty crimes is of any great importance to national policy or to the international political, legal or economic system. Beaty argues that, traditionally, crimes of this nature have been prosecuted by the host countries.

Beaty goes on to argue that, even if MEJA was found to be constitutional, he was acting outside the scope of his employment, thereby nullifying jurisdiction. Therefore, he should not be held criminally liable in the United States for his actions in Iraq. Beaty insists that, because Congress based jurisdiction under MEJA on employment status, principles of agency law would seemingly be applicable and provide guidance. Beaty argues that it would be unreasonable to

consider him an employee 24 hours a day simply based on the fact that his terms of employment require him to live oversees. He alleges that, because he was not engaged in any security related activities at the time of the alleged incident, jurisdiction is improper and this case should be dismissed.

### C.     Government's Contentions

The United States argues that the defendants were arrested and made an initial appearance in federal court before a Federal Magistrate within five days of the arrest and seven days of the filing of the Bill of Information. The government states that the Defendants were indicted within five days of being arrested, and their trial date was set approximately forty days later, well within the Speedy Trial Act.

The Government argues that, because the defendants in this case were charged by Bill of Information, an indictment was required to be filed within thirty days unless waived. The Government contends that Courts have clearly found that non-federal custody resulting from a federal detainer does not trigger the thirty day period. When a defendant is charged in a federal complaint and is in non-federal custody on state or local charges, the thirty day period begins when he is turned over to federal authorities to face the federal charges. *United States v. Johnson*, 815 F.2d 309, 312 (5th Cir. 1987). The Government points out that in *United States v. Charles*, 883 F.2d 355, 356 (5th Cir. 1989), the court held that 3161(b)'s thirty day period was not triggered because there was no federal arrest.

In response to Beaty's Lack of Jurisdiction argument, the Government argues that the Constitution provides, "All legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. Art. 1. The Government cites *Mistretta v. United States*, 488 U.S. 361 (1989), arguing that it is well settled that this provision bestows upon Congress the power to

define crimes, determine the range and types of punishment, and regulate the practice and procedure of courts.

The Government further contends that Congress has previously utilized its power derived from the Constitution to extend the application of U.S. criminal statutes to acts of the U.S. citizens undertaken beyond the territorial borders of the United States. The Government cites *United States v. Delgardo-Garcia,* 374 F. 3d 1337, 1346 (D.C. Cir. 2004), which provides that "Extraterritorial Jurisdiction" has been found in cases where the language is clear, e.g., cases involving bombings, hijackings, hostage-taking, and homicides of U.S. persons overseas and as well as the murder, kidnaping, assault, or threatening of an intentionally protected person.

The Government cites the ruling of *United States v. Martinez*, 599 F.Supp.2d 784, (W.D. Tex., 2009), which provided that "Generally there is no constitutional bar to the extraterritorial application of the United States penal laws." The court in *Martinez* further provided that Congress intended MEJA to apply extraterritorially, which was evidenced by the fact that the law itself spoke "to being applied extra-territorially."

The Government submits that contextual reasons exist here and this is just the type of case that Congress intended to extend the jurisdictional reach of prosecution as it relates to oversees civilians. The Government further argues that Congress was clear and the language of MEJA expressly sets forth the jurisdictional scope and parameters in which the Act is to be utilized. The Government cites *Nixon v. United States*, 352 F.2d 601 (5th Cir. 1965) the 5th Circuit held that federal jurisdiction exists over offenses committed outside the United States under the territorial principle of international law. The Court in *Nixon* also held that federal jurisdiction existed over offenses committed outside the United States under the nationality principle of international law. The Government contends that the facts of this case, as in *Martinez*, withstand

scrutiny under the principles of international law and the extraterritorial application in this case is not unreasonable under international law.

**D.    Analysis**

18 U.S.C. §3161 provides that any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. In *United States v. Johnson*, 815 F. 2d 309, 312 (5th Cir. 1987), the court held that the filing of a federal complaint does not, in the absence of a federal arrest in connection with that complaint, trigger the time requirement of 3161(b).

In this case, Defendant Beaty was detained on September 27, 2008 by the Naval Criminal Investigation Service (NCIS). Although a federal complaint may have been filed, there was no federal detention. Thus, the September 27, 2008 detention did not trigger the thirty day requirement. On December 5, 2008, federal marshals took custody of Beaty after a telephone hearing with Magistrate Judge Hill. This December 5, 2008 detention triggered the thirty day requirement as set out in 18 U.S.C. §3161(b). Beaty was indicted five days after being arrested, and his trial date was set approximately 40 days later. Clearly, the Defendant was indicted well within the thirty day time period allowed by the Speedy Trial Act. Therefore, Defendant's Motion to Dismiss the Indictment for a violation of the Speedy Trial Act is DENIED.

Congress enacted MEJA in order to extend the application of United States criminal statutes to acts of U.S. citizens undertaken beyond the territorial borders of the United States. The Supreme Court has recognized this concept stating, "The laws of no nation can justly extend beyond its own territories, except so far as regards its own citizens..." *The Appallon, 9 Wheat.* 363, 307, 6 L.Ed. 111 (1824). Extraterritorial jurisdiction can be found if there is a showing of

specific congressional intent and on the basis of "intended and actual detrimental effects" that a criminal act may have within the United States. "Extraterritorial Jurisdiction" has been found in cases where the language is clear, e.g., cases involving bombings, hijackings, hostage-taking, and homicides of U.S. persons overseas and murdering, kidnaping, assaulting, or threatening of an intentionally protected person. *United States v. Delgardo-Garcia,* 374 F. 3d 1337, 1346 (D.C. Cir. 2004). It is clear that Congress had the authority to confer extraterritorial jurisdiction under MEJA to prosecute civilians accompanying the military oversees. Defendant Beaty's alleged actions combined with Congress' clear intent to protect against criminals in these types of circumstances is a prime example of why MEJA was enacted.

Imputed liability to an employer is not a defense to criminal activity. Nothing in the statutory text of MEJA, or the Federal Code, the Uniform Code of Military Justice, or case law suggests that a defendant is absolved of criminal liability when he acts outside the course and scope of his employment. If that were the case, then every civilian employee oversees would be exempt from criminal liability. Therefore, Defendant's Motion to Dismiss for Lack of Jurisdiction is DENIED.

### E. Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss for Lack of Jurisdiction [Doc. 55] and Defendant's Motion to Dismiss for violation of The Speedy Trial Act [Doc. 56] is hereby DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, on this the 12th day of February, 2010.

JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT JUDGE
WESTERN DISTRICT OF LOUISIANA